My name is Tom Grace and I'm here on behalf of the Plaintiff Appellant, LVRC Holdings. Listening to the arguments before me, I think I'm going to change the way I was planning on doing this as I learned some from sitting there. There really were three mistakes that I believe that the district court made, three errors. And I think they were errors of fact, and I think there were also errors of law that colored his view of the facts that resulted in what I thought, what I believe is an error in granting summary judgment. The first, the court, the district court looked at, that made the determination that emails sent by Mr. Brekka to his home were within the scope of his employment because simply they occurred before the employment ended. The court just reaches that conclusion without much analysis. I mean, really. Aren't you assuming a gloss on the statute that may or may not be there, namely the agency relationship notion? If he's authorized, if you look only at the statute, shouldn't the inquiry end there rather than adding the requirement that he be performing within the scope of an agency, which you would contend he's no longer performing because he's breached his duty to the employer? I really think that is the critical issue in this case. And I think the answer is that an employee, once the employee is acting outside of their duty of loyalty, if they do so by using their employer's computers, that access is unauthorized pursuant to the Computer Fraud and Abuse Act. So that's the Seventh Circuit. You're asking us to adopt the Seventh Circuit analysis in Citrin. Is that right? I am. And I believe that's appropriate because of the situation that employers are in. And I believe this case is significant for that purpose. Given the means and methods that exist today to remove information from an employer and misuse it, I believe that if the employer can show that that misuse was outside of the duty of loyalty, that the employee owes to the employer, that that misuse is unauthorized. Let me just ask you this. I mean, even assuming we accepted your proposal and your interpretation of the statute, the evidence in the record does not, I guess, where is the evidence in the record that at the point when he was e-mailing himself he wasn't, he was not acting in the scope of his employment? I mean, he says, I was still in negotiations whether to buy a part of the business and I might have ended up keeping working there. So what's the evidence that at that point he was acting only on his own behalf? I believe the evidence is circumstantial, which I also think is an important issue for this case. Looking at the evidence that was presented to the district court as a whole, I initially viewed this case as the, as the, as Mr. Brekka's pre or, you know, actions during his employment and his actions post-employment. But I believe that his actions post-employment color what he was doing towards the very end of his employment. Well, I know you say he was shortly after he e-mailed himself he quit. But the only thing I saw in the, or was terminated or whatever, they parted ways. But the only thing I saw in the record, and maybe you can point me to something else, about what his, his mindset was or during the period when he was e-mailing himself was his declaration, I don't know, I wasn't planning to quit, I was still in negotiations. What is in the record is the fact that Mr. Brekka was operating two other entities, EBS Employee Benefit Services Nevada and EBS Florida. Those two entities, he never, the full scope of what those entities did, he never fully disclosed to LVRC. They never fully understood what he was doing. The information that he was e-mailing himself was absolutely for the benefit of those other entities. Given what, what occurred. Go ahead. Based on what evidence? Let's see if I can find it in my brief. I believe it's, actually I believe it's in the order as well. I think that's what the district court found. I have to look for a cite to the record, but he was operating those businesses. He sends that, those e-mails to himself and then soon thereafter leaves. Then I think if you look at the post-employment actions, the post-employment actions color those actions that occurred just before he left that I'm pointing to. And here's where the court, the district court made I think another mistake. The district court believed that the secret access, I think the term I used in my brief, was available to other employees after Mr. Brekka's departure from LVRC. Mr. Smith, essentially the owner of LVRC, makes clear that that computer was wiped clean. That's deposition testimony that I know that I cited in my brief. And at what point was it wiped clean? Between the time that Mr. Brekka left and the time the computer was reissued. The district court hung its hat, hung its decision on the fact that a subsequent employee could very well have had access to that e-mail and therefore the secret access and used it and therefore it might not have been Brekka that was using that secret access afterwards. But Mr. Smith tells us that that computer was wiped clean. Now our computer forensic expert found it, but he finds it in unallocated space. That unallocated space means it had been deleted. What happens when you delete information is that it's just not, it's still there on the hard drive, but you just don't get access to it. You can't find it. The computer can't tell you where it is and pull it up. I thought there was evidence that the, maybe I'm misremembering this, that the computer, his computer just was left in his office and it wasn't like immediately taken and made secure. And it seemed that there was a period that was unaccounted for and I didn't think that the timing of when this wipe took place was clear. Is that not correct? I don't recall that. Okay. I just don't recall one way or the other. But our computer forensic expert says that the e-mail was found in unallocated space on the hard drive, which means to draw the inference in favor of Mr. Brekka, you have to assume that another employee got that computer, knew how to recover that e-mail, was able to recover it, and then subsequently used it and knew what it was for and what it was meant. I think that suggestion is far beyond what should be drawn from the record. What we do know is that the court then makes yet another mistake about understanding the facts in this case. And that is the court says I can't understand why the expert says there was post-November 04, use of the secret access. Yet there's testimony from the gentleman from Lode, who was the vendor that was supplying some of these services, these website and e-mail services, that it was shut off. The answer to that is very simple. The access was turned back on. That wasn't before the district court, right? That was later. Yeah. That's kind of a new argument. That was in your motion to reconsider, at least when I went through the document, that never before the district court. And that never got considered because then the appeal was filed. It was in the record on the motions to dismiss filed by LVRC as to the third-party complaints. That's where I found it. And it is also in the motion to reconsider. But it's also in the FBI report that is attached to the motion to reconsider. And I can give you that. I'm sorry, the motion to dismiss the third-party complaint. But not something that was argued to the district court or brought to the district court's attention. I'm not sure that a quote, I'm not sure where the FBI report came in. I'm assuming that was never brought to their attention, to the district court's attention, is that correct? I did not see it in the briefs, and it's my understanding that there was no oral argument. It was filed as part of the cross-complaint? There was a motion to dismiss that was filed by LVRC on docket number 78, page 44. Page? 4445. And in the FBI's report, it says, Breck is not aware that his actions have been discovered. Initially, they shut down Breck's access, but, and then it's whited out by the FBI. It's redacted. Recommendation, they renewed his access. However, he accesses the system, he will enter the system that does not give him access to the company information. So does that mean that even if that were corrected, it was reactivated and he accessed it on that day, it wouldn't meet the criteria for being a violation of the Computer Fraud Act, because he had no access to confidential information? No. What I believe that it would show is that Mr. Breck absolutely had the secret access, knew exactly how to use it from outside of LVRC's offices and away from his computer, and was doing so. But let me get in a gap here, because if he had access and could get back on, but it had been wiped in terms of information, does he have the access to get into the backdoor channel to the already held information? The wiping out and the access are two different things. The wiping out is his computer at the office. The access takes him into the backdoor of the website and allows him to pull information. But this doesn't give him access to company information. So the theory is it was like a trap, but there wasn't any access to real company information. But you don't get any. So it doesn't meet this criteria for a violation of the Act, which requires you to get information that's going to do damage. But what I'm arguing is that that subsequent access, whether it gave him access to proprietary information or not, demonstrates that this is what he was doing. That he had done it before, and he was the one doing it on the 19th. And he continues to do it. That is what I, that's why I think that. So you're saying that that is direct or circumstantial evidence of how he's going about it. Correct. Which would corroborate. What the expert said. The 19th. That's right. Now, wouldn't it be as, on the one on the 19th, there's an IP address that's associated with Redwood City, right? Yes. Why couldn't you link up the IP address directly? I don't know. I mean, it just seems to me that that's not that big of a deal, but we don't have that in the record. And now we're left with. Circumstantial. Everybody arguing over what all this means. I don't know why that wasn't done and presented to the district court. But what I can say is this as well, and I do want to reserve some time for rebuttal if I've answered your questions. But what would be even simpler is for Mr. Brekka to simply have signed an affidavit that says, I did not use the secret access after my employment ended. He never says that. The deposition question wasn't the best one and doesn't get that answer. Yet there's no follow-up by his counsel. Given the numerous pleadings that have gone on here, we simply don't have that denial. And I'll reserve a little bit for rebuttal, but what I'm going to talk about is the significance of the circumstantial evidence and that standard for plaintiffs to find themselves in this situation. Thank you very much. Thank you very much. Thank you. Norman Kirschman for the appellee. I'd like to pick up on the last questions and answers briefly. Mr. Brekka was deposed for, I believe, a day and a half. And I believe I believe that the totality of his testimony was that he didn't he didn't do anything surreptitiously. That the accusations, if we look at the hard evidence, as opposed to the speculative contended circumstantial evidence, there is there's a wealth of hard evidence. Number one, Brekka was in charge of marketing. He was the contact with Lode, Nick Jones. And the appellant wants to just brush aside the fact that Nick Jones sent a dual e-mail. I think it was May 20th or May 30th of 03. With the other addressee besides Chris Brekka, Stewart. There's only one Stewart. That's Stewart Smith. We've had no explanation other than we made a mistake. The judge made all kinds of mistakes according to the appellant. But we made a mistake because this was not the secret access. This was just about a domain name. Well, it wasn't. It it was to advise his client, Mr. Smith. That Lode had made Lode had made Chris Brekka the admin tech and billing contact. Now, Mr. Smith had ample opportunity in opposing the motion for summary judgment to say, yeah, that's right. I never forget that. That's not what that e-mail meant. Well, the only one who's saying that's not what it meant is the appellant. And on its face, it certainly indicates that Mr. Smith was online, was kept within the framework of what they were doing. Can I ask you one question? This came out of the expert report, and that was that Mr. Brekka, when he mailed these business records, mailed them not only to himself, and we've had some argument about that, but also to Carol and Quayne. Well, they lived together. I understand that, but I thought there was some proviso about her not being involved and not being permitted to be involved in these matters. Well, I'll respond to that is that I don't see anything in the record to indicate that they were mailed to Carol and Quayne. They each had their own computer at home. I think what was very noteworthy about Mr. Griefen, the appellant's expert, is his vague and generalizations. For example, we don't know if the secret logon was reactivated. That's a post-summary judgment issue raised by Mr. Griefen. Is that admissible evidence? I don't believe so. We don't know if it was reactivated, when it was reactivated. Can we look at the evidence of any evidence of reactivation? What's the effect of it having been mentioned in the FBI report? Was that before the district court in a way that preserved it for appeal? If it was reactivated, and at the time, interesting, if I might just digress, but answer your question. On November 19th, there was evidence that Lode picked up that there was some activity, and it was using the password of Cbreka. Interesting to speculate as to how long it would have taken anybody who was computer literate, who was looking for a code, to figure out Cbreka was Chris Breka. Opposing counsel says he's the only person who could have had that login information, because the computer, which had the email, had been erased, and you would need to be a forensic expert to actually recapture that. Is that correct? That is not correct, because the only evidence that the computer had been reformatted or erased, and Mr. Smith testified to that, and he also testified that he's pretty much, he's certainly not computer literate. He didn't know the difference. Let me just go back. I have this reference now. It's in the defendant's motion for summary judgment. The expert report says he had sent it to his personal email address and to Carolyn Quain. These attachments appear to be private company records. What are we to make of that in terms of authority to send to Carolyn Quain? Well, the Carolyn Quain story goes back to a long relationship between Mr. Smith and Carolyn Quain, not as an employee of Chris Breka's consulting company. And he had a personal. I think the record comes across that he was rejected in favor of Chris Breka. One of the problems in listening to this case is that it's pretty hard to figure out what the facts are. Well, the facts are real easy. In terms of where they fall, I mean, everybody has their facts and their circumstantial evidence, but there is some real question as I read through this as to whether there's factual issues that can't be resolved on summary judgment. Well, the factual issue really had to boil down to whether Chris Breka or Carolyn Quain, I believe after termination of his employment at a time there was, you know, the district judge pointed out there was no agreement. I don't even believe that there was a fiduciary duty because Chris Breka was not an officer and there was no confidentiality. So I think that as far as. I don't think there's any common law obligation with respect to a former employee. I'm not saying he did or didn't, but not going in and making access to the employers. But we don't know what he what what access he made. I didn't say he did. I said assuming if he did. I don't think there's a common duty to do that. I mean, you don't need a fiduciary duty. Clearly a duty of loyalty by all employees. But what we know and what I don't believe that the appellant rebutted, what we know is that that the on the 22nd of November, three days after the access. Nick Jones sent another email to Mr. Greenstein calling his attention to the fact that he did not and cannot identify a person. All he was able to identify was the C Breka. Three days after that. No, I'm sorry. The day after that. And I'm only going into this thing into the FBI report because counsel did. The day after receipt of Nick Jones's clarifying email by Mr. Greenstein. The FBI receives a telephonic complaint. And in the telephonic complaint, the allegation that Chris Breka and Carolyn Quain were caught on the database. That is repeated several times in the FBI report, albeit redacted sources. But I think it's pretty clear what source it was. It was LVRC and probably Mr. Greenstein, who filed the false affidavit in order to obtain the search warrant. And in that affidavit, he swears that Chris Breka and Carolyn Quain were caught on the database. The objective evidence comes from Nick Jones. Nick Jones was asked on cross-examination. No, he was the witness that I subpoenaed. He was asked, where do you believe the source was? And it's in our brief. Mr. Jones said that the source was somewhere in northern California, probably Redwood City. And then he volunteers that had they gone to the server, they would have been able to get more definitive information as to the source. But he was never requested to go to the server. And at the time of Jones' testimony, that was before the motion was filed. Mr. Greetham, the forensics expert, had been on LVRC's payroll for some time. And they don't make any effort to refine evidence of source. And I submit, I submit that a reasonable inference would be that they didn't want to take a chance. But the problem is, once you start making inferences, you're, you know, all the facts have to be in their favor on a summary judgment. You may be right. I'm just trying to slot the various facts you've all presented into the summary judgment standard. And so the inference has to be to the other side, not to. Well, then I'll leave it. I'll just leave it for the courts to question themselves as to why, why Mr. Smith wouldn't have told Nick Jones, let's get, let's get as good source evidence. And how do we do that? Well, they never even went that far. You've asked for certain relief in your answer in brief. Yes. Is that properly before the court, given that you didn't file a cross-notice of appeal? I hope not. I couldn't have. I couldn't have. Well, I was too busy trying to defend the summary judgment. And perhaps, perhaps the Court's right. I felt that some of the cases I read indicates that the appellate body has substantial discretion if it finds, if it finds that there was, you know, an abusive process here and that, you know, it's still going on. But I'll take any more questions the Court has. It appears there's no more. Thank you. Could you respond to his statement, you know, there's no real evidence. Mr. Brekker was on that computer. And you were one step away from finding out the real answer and chose not to do it. And you do have the burden. I have two responses. The first is I don't think defendants should be telling plaintiffs exactly how to prove the case. In other words, would that be helpful evidence? Sure. Does that mean that the opponents to a motion for summary judgment can dictate one type of evidence to be more significant than another? I don't. Not on a summary judgment. I believe that the, yes, I would like to know those answers to those questions had I been there. Maybe we would have a different record. Maybe we wouldn't be here. But I don't have that luxury. But nevertheless, I don't believe that the defendant here should be telling the plaintiff exactly what they need to do to prove their case. Those computers that our computer forensic expert found evidence of use of the login were Brekker's computers. They were used in the business that promoted and assisted companies that were competitive to LVRC. And I'm noting that I'm going over my time. Thank you. Thank you very much. Thank you for your arguments. The case just argued LVRC versus Brekker is submitted. Thank you.
judges: McKeown, Ikuta, Selna